## ELDER *v.* COLLIER *et al.*, commissioners.

1. The act of March 3, 1875, "for the relief of maimed and indigent soldiers," not being such a local or private act as is embraced within the intent and meaning of par. 4 of sec. 1, art. 12 of the constitution, was not kept in force by virtue of that paragraph; and consequently, if in conflict with the provisions of par. 2 of sec. 6, art. 7, of the constitution, which specifies and limits the purposes for which taxes may be levied by counties, the act in question was thereby repealed.

2. This act does conflict with the last mentioned paragraph of the constitution, because that paragraph contains no language which would warrant county taxation for the purpose of raising money to pay an annual pension to each member of a specified class of Confederate soldiers who "has not more than one thousand dollars of taxable property." The authority to

impose such taxation is certainly not derivable from the
general power of levying taxes "to support paupers."
3. The General Assembly has, and exercises, the power of pro-
   viding, by State taxation, for the payment of pensions to Con-
   federate soldiers.

Argued January 19,—Decided March 3, 1897.

Application for mandamus.    Before Judge Lumpkin.
Fulton county.   September 19, 1896.

*Longino & Golightly*, for plaintiff.
*L. Z. Rosser*, for defendants.

LUMPKIN, Presiding Justice.

In 1875, the General Assembly passed an act for the re-
lief of maimed and indigent soldiers.   It provided for the
levying of a special county tax for the purpose of raising
a fund from which to pay $100 annually to each Confed-
erate soldier who had not more than $1,000 of taxable prop-
erty, and who had lost both eyes or two limbs in military
service during the late civil war.   See Acts of 1875, pp.
107, 108.   The present Constitution, which was ratified by
a vote of the people on the 5th day of December, 1877, de-
clares: "The General Assembly shall not have power to
delegate to any county the right to levy a tax for any pur-
pose, except for educational purposes in instructing children
in the elementary branches of an English education only;
to build and repair the public buildings and bridges; to
maintain and support prisoners; to pay jurors and coroners,
and for litigation, quarantine, roads, and expenses of courts;
to support paupers and pay debts heretofore existing."   Civil
Code, §5892.

W. R. Elder, a soldier who had lost both of his eyes while
serving in the Confederate army, was, under the provisions
of the act above cited, paid an annual pension of $100 from
the treasury of Fulton county for a period of more than
fifteen years which included the year 1895.   The board of
commissioners of that county having refused to levy any
tax for the year 1896 for the payment of pensions of this

character, the plaintiff in error applied for a mandamus to compel them to do so. His bill of exceptions assigns as error the refusal of the superior court to grant the writ of mandamus. One of the reasons assigned in the answer of the commissioners for declining to levy the tax was, that the act of 1875 had been abrogated by the above quoted paragraph of the constitution. We are constrained to hold that the position thus taken was correct, and that the superior court rightly so adjudged. While we regret that the provisions of our constitution relating to county taxation are so stringent as to exclude from the benefits provided for in the act of 1875 the few remaining veterans in whose behalf it was enacted, and whose number is annually decreasing, we have no election but to carry out the will of the people as expressed in their organic law. For ourselves, we would have been very glad indeed if these old heroes had been permitted to continue to draw their annual stipend from the counties in which they respectively live; but this, we think, was forbidden by the people themselves in convention assembled. It is obvious, however, that the old soldiers were not overlooked, for that very convention provided for furnishing them with artificial limbs. Civil Code, §5882. Having done this, and having specifically limited the purposes for which county taxes might be levied, without including any provision for Confederate soldiers, the conclusion is irresistible that there was no intention to allow anything to them from county treasuries.

It was insisted here that the language, "the General Assembly shall not have power to delegate to any county the right to levy a tax for any purpose," etc., was not intended to deprive counties of any existing right to levy taxes. We find it impossible to give our assent to the correctness of this proposition. To do so would simply be to emasculate the paragraph in question of much of the force it was designed to have. In other words, we think this paragraph means that there shall be no county taxes for any purposes except those

expressly therein enumerated. A casual reading of it will show that it confers no authority for paying pensions to soldiers out of funds to be raised by county taxation. It would be invidious to declare that the words "to support paupers" were applicable to them; and moreover, the act of 1875 itself allows pensions to soldiers having taxable property not exceeding $1,000 in value. A man owning property to this amount could in no event be called a pauper.

Another contention of the plaintiff in error was, that the act of 1875 was kept in force by another paragraph of the constitution, which declares that: "Local and private acts passed for the benefit of counties, cities, towns, corporations, and private persons, not inconsistent with the supreme law, nor with this constitution, and which have not expired nor been repealed, shall have the force of statute law, subject to judicial decision as to their validity when passed, and to any limitations imposed by their own terms." Civil Code, §5935. This paragraph certainly cannot be held applicable to the act of 1875, which was a general, and not a local or private law. This, we think, is apparent without argument.

The provisions of the constitution embraced in section 5882 of the Civil Code have been extended by various amendments looking to the further relief of Confederate soldiers, and also bestowing certain benefits upon their widows. So it seems to be the settled policy of the State to provide pensions for these classes of persons exclusively by State taxation; and it is not improper to remark that the various General Assemblies which have dealt with these matters have been as liberal in this respect as the financial condition of the people of this State will allow.

*Judgment affirmed. All the Justices concurring.*